UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DARRYL LAMONT YOUNG and<br>AQEELAH NGIESHA WILLIAMS,<br><br>Defendants. | CASE NO. 2:24-cr-00176-JNW<br><br>ORDER DENYING DEFENDANT<br>WILLIAMS'S MOTION TO SEVER |

Before the Court is Defendant Aqeelah Ngiesha Williams's motion to sever her trial from that of her co-defendant's, Darryl Lamont Young. Dkt. No. 107. The Government opposes the motion. The Court DENIES the motion for the reasons stated below.

## 1.  BACKGROUND

Defendants Aqeelah Ngiesha Williams and Darryl Lamont Young are charged with defrauding individuals by obtaining personal identifying and financial account information from victims to access the victim's financial accounts and to withdraw and transfer funds. *See* Dkt. No. 53 (Superseding Indictment). A grand

ORDER DENYING DEFENDANT WILLIAMS'S MOTION TO SEVER - 1

jury charged Young and Williams with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count 1); one count of conspiracy to commit aggravated identity theft in violation of 18 U.S.C. § 371 (Count 2); six counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Counts 3-8); and six counts of aggravated identity theft in violation of 18 U.S.C. §§ 1028A and 2 (Counts 9- 14). Dkt. 53. All fourteen counts in the Superseding Indictment are charged against both defendants. *Id.*

## 2.  DISCUSSION

### 2.1    The Court denies Williams's motion to sever.

Williams moves to sever her trial from that of her co-defendant Young. Dkt. No. 107. There is a strong preference for joint trials of defendants who are indicted together. *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980); *see also Zafiro v. United States*, 506 U.S. 534, 537 (1993). Federal Rule of Criminal Procedure 8(b) permits an indictment to charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. (8)(b). Joint trials promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro*, 506 U.S. at 537. A joint trial is especially appropriate where the co-defendants are charged with conspiracy, because "the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible

against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004).

But Rule 14 recognizes that joinder may prejudice a defendant, and it provides that "the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed R. Crim. P. 14(a). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The test is "whether a joint trial [is] so manifestly prejudicial as to require the trial judge to exercise [her] discretion in but one way, by ordering a separate trial." *United States v. Patterson*, 819 F.2d 1495, 1501 (9th Cir. 1987). And even where some risk of prejudice exists, appropriate limiting instructions ordinarily cure that risk. *See Zafiro*, 506 U.S. at 540–41.

Williams advances four arguments for severance. First, she contends that Young's "criminal history and other bad acts (prison and jail infractions) as well as his statements to law enforcement," which the Government is anticipated to introduce, will prejudice her. Dkt. No. 107 at 5. Second, she contends that, "based on the sheer weight of the evidence[,] the jury would, regardless of the fact of innocence of Ms. Williams, convict her." *Id*. Third, she argues that Young's statements will create a *Bruton* problem if he does not testify. *See Bruton v. United States*, 391 U.S. 123, 127–28 (1968). Fourth, she argues that Young's decision to represent himself, together with the risk of mutually antagonistic defenses, requires severance. Dkt. No. 158. The Court addresses each argument in turn.

ORDER DENYING DEFENDANT WILLIAMS'S MOTION TO SEVER - 3

### 2.1.1    Spillover effect.

First, Williams argues that the jury will allow evidence of Young's "criminal history and other bad acts (prison and jail infractions) as well as his statements to law enforcement" to "spillover" into its assessment of her guilt. Dkt. No. 107 at 5. "A claim of prejudicial spillover cannot succeed unless 'a defendant ... prove[s] prejudice so pervasive that a miscarriage of justice looms.' " *United States v. Lazarenko*, 564 F.3d 1026, 1043 (9th Cir. 2009). Williams does not meet this high burden. She offers nothing beyond a general statement that Young's criminal history, prior bad acts, and statements to law enforcement exist. Dkt. No. 107 at 5.

"The prejudicial effect of evidence relating to the guilt of co-defendants is generally held to be neutralized by careful instruction by the trial judge." *Escalante*, 637 F.2d at 1201. Thus, a defendant "seeking severance based on the 'spillover' effect of evidence admitted against a co-defendant *must* also demonstrate the insufficiency of limiting instructions given by the judge." *United States v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998) (emphasis added). The Ninth Circuit has recognized that even where related but separate conspiracies are tried together, limiting instructions can avert spillover prejudice. *Fernandez*, 388 F.3d at 1243.

This case is less complicated than *Fernandez*: Young and Williams face the same charges—conspiracy to commit wire fraud and conspiracy to commit aggravated identity theft along with substantive counts of wire fraud and aggravated identity theft. Dkt. 53.

Moreover, because Young and Williams are charged in the same conspiracies, much of the evidence Williams attributes to Young—including how the scheme

operated and the calls placed to victims—would be admissible against her in a separate trial as proof of the conspiracies she allegedly joined and, as to Young's statements, as co-conspirator statements in furtherance of them. *See* Fed. R. Evid. 801(d)(2)(E). Joint trial is therefore particularly appropriate, because "much of the same evidence would be admissible against [each defendant] in separate trials." *Fernandez*, 388 F.3d at 1242–43. Evidence independently admissible against Williams is no basis for severance; the spillover concern is confined to evidence specific to Young—his criminal history and jail and prison infractions—which an appropriate limiting instruction can neutralize.

Nor does the argument that Young was more culpable or the moving force behind the scheme offer a sufficient reason to sever. The mere fact that a criminal defendant is jointly tried with a more culpable co-defendant is not alone sufficient to grant severance. *United States v. Van Cauwenberghe*, 827 F.2d 424, 432 (9th Cir. 1987). Furthermore, the jury will be instructed to consider the guilt of each defendant separately. *United States v. Rasheed,* 663 F.2d 843, 854–55 (9th Cir. 1981). Because Williams has not shown that limiting instructions would be insufficient to cure any prejudicial spillover, the Court is not persuaded that the risk of prejudice is so high as to warrant severance. *See, e.g., United States v. Son Van Nguyen*, No. CR. S-99-0433 WBS, 2002 WL 32103063, at * 2 (E.D. Cal. Nov. 7, 2002); *United States v. Moss*, No. CR1802220TUCRMEJM, 2021 WL 423424, at * 3 (D. Ariz. Feb. 8, 2021); *United States v. Jeannette*, No. 319CR00026LRHWGC, 2021 WL 1214773, at *2–3 (D. Nev. Mar. 30, 2021); *United States v. Sulla*, No. CR 22-00058 JAO-KJM, 2023 WL 8789690, at *8 (D. Haw. Nov. 28, 2023).

ORDER DENYING DEFENDANT WILLIAMS'S MOTION TO SEVER - 5

### 2.1.2     Sheer weight of the evidence argument.

Second, Williams argues that, "based on the sheer weight of the evidence[,] the jury would, regardless of the fact of innocence of Ms. Williams, convict her." Dkt. No. 107 at 5. That is not a valid reason to sever. *United States v. Polizzi,* 801 F.2d 1543, 1554 (9th Cir. 1986) (the fact that more evidence may be introduced against a co-defendant is not a reason to sever).

### 2.1.3     *Bruton*.

Third, Williams anticipates a *Bruton* problem. *Bruton* established that in joint criminal trials, the introduction of "powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant," but who does not testify, violates the defendant's Sixth Amendment right to confront the witnesses against him. *Bruton v. United States*, 391 U.S. 123, 135–36 (1968). But the Confrontation Clause's protections depend on the "testimonial" character of a statement. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). Courts apply the "primary purpose test" to mark the boundaries of testimonial evidence. *Ohio v. Clark,* 576 U.S. 237, 244 (2015). A statement is testimonial when it results from questioning, "the primary purpose of [which was] to establish or prove past events potentially relevant to later criminal prosecution," *Davis v. Washington*, 547 U.S. 813, 822 (2006), or when a written statement is "functionally identical to live, in-court testimony" and "made for the purpose of establishing or proving some fact" at trial, *Melendez-Diaz v. Massachussetts*, 557 U.S. 305, 310–11 (2009) (internal quotation marks omitted).

ORDER DENYING DEFENDANT WILLIAMS'S MOTION TO SEVER - 6

The statements Williams identifies are nontestimonial and fall outside the Confrontation Clause's protection. *See Crawford*, 541 U.S. 36. The statements include (1) a narration of a telephone call that Young made to a Veterans Affairs employee, Dkt. No. 107-1 at 2–3, (2) a letter from Young to this Court airing grievances about his case, Dkt. No. 107-1 at 4–6, and (3) an apology letter from Young to Williams, Dkt. No. 107-2 at 2. The first document recounts a phone call where Young discusses being "unjustly and illegally persecuted" and asks the VA agent to connect him with the special prosecutor assigned to his case. The second document is a letter by Young to this Court complaining about the handling of his case. The third is an apology to letter to Williams, where Young takes responsibility. These statements by Young are not "testimonial" under any reading of the law—they are not the functional equivalent of "live in-court testimony," *Melendez-Diaz*, 557 U.S. at 310–11, and they do not have the "primary purpose of assisting in [the defendant's] prosecution," *Clark*, 576 U.S. at 246. In any event, the Government represents that it does not intend to offer these statements as evidence at trial. Dkt. No. 147 at 7.

Williams's general concerns about the possible admission of testimonial statements by Young does not show a serious risk of compromising a specific trial right or preventing the jury from reaching a reliable decision. *Zafiro*, 506 U.S. at 539. That said, the Government must nonetheless ensure that its use of Young's statements does not run afoul of Williams's confrontation rights, and nothing prevents Williams from seeking further relief through filing motions or jury instructions to protect her rights on this issue.

ORDER DENYING DEFENDANT WILLIAMS'S MOTION TO SEVER - 7

### 2.1.4    Young's pro se status and the claimed antagonistic defenses.

To the extent Williams moves to sever based on Young's pro se status and the possibility that he may inject "inflammatory" or irrelevant matters into the trial, this mere possibility alone is not a sufficient reason to sever. *United States v. Atcheson*, 94 F.3d 1237, 1244 (9th Cir. 1996) (rejecting argument that co-defendant's pro se status by itself required severance absent "demonstrated … manifest and unfair prejudice"). Williams concerns are speculative and she identifies no specific statement or filing by Young that would prejudice her defense. Any risk of prejudice can be managed through the ordinary tools of the trial court at trial, such as limiting and curative instructions.

Williams also argues that severance is required because her defense and Young's are mutually antagonistic. She identifies her defense as a general denial and contends that Young *may* seek to shift blame to her. Even crediting that characterization, severance is not warranted. "T[o be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that the core of the codefendant"s defense is so irreconcilable with the core of [her] own defense that the acceptance of the codefendant"s theory by the jury precludes acquittal of the defendant." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). A general denial is not so irreconcilable with Young's anticipated effort to minimize his role that a jury could not credit William's denial and Young's account. In other words, acceptance of Young's theory would not necessarily compel Williams's conviction. And "the desire of one defendant to exculpate himself by inculpating a codefendant … is insufficient to require severance." *Id.* Courts have consistently

held that this type of blame-shifting among co-conspirators does not support a finding of mutually antagonistic defenses. *United States v. Rodrigues*, No. 2:09-CR-00022-MMD, 2014 WL 1155411, at * 11 (D. Nev. Mar. 19, 2014) (collecting cases). In any event, "[m]utually antagonistic defenses are not prejudicial per se." *Zafiro*, 506 U.S. at 540.

### 3.  CONCLUSION

Accordingly, the Court DENIES Williams's motion to severe. Dkt. No. 107.

Dated this 24th day of June, 2026.

Jamal N. Whitehead
United States District Judge

ORDER DENYING DEFENDANT WILLIAMS'S MOTION TO SEVER - 9