UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DARRYL LAMONT YOUNG and<br>AQEELAH NGIESHA WILLIAMS,<br><br>Defendant. | CASE NO. 2:24-cr-00176-JNW<br><br>ORDER DENYING DEFENDANT WILLIAMS'S MOTIONS TO SUPPRESS |

## 1. INTRODUCTION

Before the Court are Defendant Aqeelah Ngiesha Williams's two motions to suppress. Dkt. Nos., 108, 109. The first motion seeks to suppress statements Williams made to law enforcement officers during her arrest on the grounds that she was not properly or timely *Mirandized*. Dkt. No. 108. The second motion seeks to suppress the over 700 jail call recordings between Williams and her co-defendant and alleged co-conspirator Darryl Lamont Young on the grounds that these taped phone recordings were obtained in violation of her Fourth Amendment right to privacy. Dkt. No. 109. Williams seeks an evidentiary hearing on both motions. The

ORDER DENYING DEFENDANT WILLIAMS'S MOTIONS TO SUPPRESS - 1

Government opposes the motions. The Court DENIES the motions for the reasons stated below.

## 2. MOTION TO SUPPRESS STATEMENTS DURING ARREST

Williams has submitted the body-worn camera recording of her arrest. Dkt. No. 109. The recording captures officers' interactions with Williams from the time they approached her until they arrived at the courthouse for her initial appearance and arraignment. Williams moves to suppress her statements made during the arrest, arguing she was not properly or timely *Mirandized*.

### 2.1.1    Legal standard.

Before the police may interrogate a criminal suspect in custody, they must first advise them of their *Miranda* rights: "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). An individual may waive their *Miranda* rights, however, "provided [that] the waiver is made voluntarily, knowingly and intelligently." *Id.* at 444. "There is a presumption against waiver," which the Government may overcome by showing "by a preponderance of the evidence" that the defendant knowingly and voluntarily waived their Miranda rights. *United States v. Crews*, 502 F.3d 1130, 1139–40 (9th Cir. 2007). "To meet this burden, generally, the Government must prove that, under the totality of the circumstances, the defendant was aware of the nature of the right being abandoned and the consequences of such

ORDER DENYING DEFENDANT WILLIAMS'S MOTIONS TO SUPPRESS - 2

abandonment." *Id.* at 1140. A defendant "who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Berghuis v. Thompkins*, 560 U.S. 370, 388–89 (2010). *North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (express waiver of *Miranda* rights is not required and "waiver can be clearly inferred from the actions and words of the person interrogated").

### 2.1.2    Williams's pre-*Miranda* statements were not the product of interrogation.

Williams moves to suppress her pre-*Miranda* statements. The pre-*Miranda* statements by Williams mostly include conversations around how to lock her apartment door and figuring out how to get Williams's aunt's phone number so that Williams could make a call later. Dkt. No. 111. Williams asked Agent Frederick why she was being arrested and he explained that she was being arrested "for wire fraud and aggravated identity theft" for "those calls...with Darryl." Dkt. No. 111 at 14:14. This prompted Williams to say that she "hadn't spoken with Darryl in like years." *Id.* Although Williams was likely in custody at the time these statements were made—she was handcuffed, facing a wall, with officers blocking her exit—she was not subject to interrogation. *Miranda* only applies "where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). "Interrogation is defined not only as express questioning but its 'functional equivalent.'" *United States v. Moreno Flores*, 33 F.3d 1164, 1169 (9th Cir. 1994) (quoting *Innis*, 446 U.S. at 300-01). An "interrogation" is "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit

an incriminating response from the suspect." *Grimes v. Phillips*, 105 F.4th 1159, 1167-68 (9th Cir. 2024) (quoting *Innis*, 446 U.S. at 300-01). During the pre-*Miranda* portion of the arrest, there was no express questioning by Agent Frederick, except to confirm Williams's identity. *United States v. Zapien*, 861 F.3d 971, 975 (9th Cir. 2017) (routine identification questions are not an interrogation). Nor was there any functional equivalent of interrogation. Agent Frederick mentioned Darryl's name in response to Williams's question about what she was arrested for, but passing mention of an alleged co-conspirator's name in response to a question about the reason for her arrest, is not the functional equivalent of interrogation for *Miranda* purposes. *United States v. Allen*, 699 F.2d 453, 459 (9th Cir. 1982) ("Statements volunteered by a suspect in custody are admissible despite the absence of Miranda warnings if they are free from interrogation or other coercion.")

### 2.1.3    Williams waived her *Miranda* rights.

Williams moves to suppress all the statements she made during her arrest, including her post-*Miranda* statements because "there is no indication that she was explained that she could waive her right to be silent nor an admonition not to speak with them unless she waived her right." Dkt. No. 108 at 2. Williams also argues that she was not timely advised of her *Miranda* rights and points out that she was handcuffed during the entire arrest interaction.

The Court has reviewed the recording of Williams's arrest on October 4, 2024. The video captures law enforcement officers' interactions with Williams from the time they approached her until they arrived at the courthouse for Williams's initial

appearance and arraignment. The video shows Agent Frederick identifying himself, confirming Williams's identity, and then arresting her. Dkt. No. 111 at 14:13. When asked why she was under arrest, Agent Frederick explained that it was for "wire fraud" and "aggravated identity theft" related to "those calls… with Darryl." *Id.* at 14:14. A few minutes of discussion ensued about the logistics of locking Williams's apartment door and obtaining her aunt's cellphone number. Agent Frederick then read Williams her *Miranda* rights. *Id.* at 14:22. When asked whether she understood her rights, Williams responded "yes." At no point during the arrest did Williams state that she wished to speak to a lawyer or that she wanted to invoke her right to remain silent. To the contrary, Williams volunteered statements, asking if she needed to bring identification, and responded to Agent Frederick's question about whether Williams played basketball. When they got into the car, Agent Frederick began questioning, saying, "so all those calls Aqeelah, he was calling from jail right, all those are recorded… right?" *Id.* at 14:30. Agent Frederick then said that he had listened to some of those calls where Aqeelah appeared and that this was "something for [you] to think about." He then said, "so if you [want] to chat and talk, I'm happy to sit down and listen." *Id.* at 14:31. Williams then asked if Young was in custody, to which Agent Frederick said: "he's already in custody." *Id.* at 14:34. Williams then started asking Agent Frederick if he played any sports, which prompted a longer conversation about women's basketball, Caitlin Clark, Diddy, and Maisa Russell. *Id.* at 14:48. Conversation then shifted to what would happen when they arrived at their destination. Agent Frederick explained the intake process, initial appearance, and the arraignment hearing. *Id.* at 14:49. Williams

ORDER DENYING DEFENDANT WILLIAMS'S MOTIONS TO SUPPRESS - 5

asked whether her conversations with Agent Frederick could be used against her. *Id*. at 14:49. He responded indirectly by saying that those who cooperate often have advantageous outcomes.

From a review of the record, it is clear that Williams waived her *Miranda* rights by volunteering statements and responding to questions. *See United States v. Moreno-Flores*, 33 F.3d 1164, 1170 (9th Cir. 1994) (holding repeated statements made by a suspect after he was arrested and given *Miranda* warnings were voluntary and admissible). Williams engaged in a "course of conduct indicating waiver," *Berghuis,* 560 U.S. at 384, namely that she "impliedly waive[d] ... [her] rights by answering an officer's questions after receiving *Miranda* warnings." *United States v. Rodriguez-Preciado,* 399 F.3d 1118, 1127 (9th Cir. 2005). Waivers of *Miranda* rights need not be explicit; a suspect may impliedly waive the rights by answering an officer's questions after receiving *Miranda* warnings. *Terrovona v. Kincheloe*, 912 F.2d 1176, 1179–80 (9th Cir. 1990). Had Williams wanted to remain silent, she could have said nothing in response or invoked her *Miranda* rights, ending the interrogation.

The record also establishes that Williams's waiver was voluntary. Nothing in the recording indicates that officers coerced, threatened, or improperly induced her statements. *See Rodriguez-Preciado,* 399 F.3d at 1128 (valid waiver where there was no "evidence of coercion or improper inducement").

Accordingly, the Court, finding no *Miranda* violation, denies the motion to suppress the statements made by Williams during her arrest.

### 2.1.4    An evidentiary hearing is not needed.

Williams requests an evidentiary hearing. The Court denies the request on this record. She vaguely asserts that "[a]s will be clear from the testimony that will be presented, Ms. Williams was not timely advised of her rights by the Agent when she was detained and arrested." Dkt. No. 107 at 3. Yet the video evidence submitted by Williams shows the opposite—that she was not subject to custodial interrogation before her *Miranda* warnings were read, that law enforcement officers properly read her *Miranda* rights, and that she waived her *Miranda* rights. Moreover, an evidentiary hearing on the issue of timeliness is unhelpful when there is no evidence that any custodial interrogation occurred before the *Miranda* warnings were read. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."). Accordingly, the Court finds that there is no genuine factual dispute and denies Williams's request for an evidentiary hearing.

## 3.    MOTION TO SUPPRESS JAIL CALL RECORDINGS.

Williams moves to suppress the jail call recordings between her and co-defendant Young that originated from King County correctional facilities. Dkt. No. 109 at 2. She argues that these recorded calls violate her right to privacy under the Fourth Amendment, and that she did not validly consent to the recorded calls. The calls were placed by co-defendant Darryl Lamont Young to Williams while Young

was in custody in King County jail on unrelated charges. The Government intends to rely on these calls, which total around 700, as evidence connecting Young and Williams to their fraud scheme which occurred over phone calls. When Young called Williams from jail, Williams would be notified via an automated message that she was receiving a call from "Darryl Young, an incarcerated individual at King County Correctional Facility." Dkt. No. 111. The message further informed her, "This call is not private. It will be recorded and may be monitored. If you believe this should be a private call, please hang up and follow the facility instructions to register this number as a private number. To accept this free call, press one. To refuse this free call, press two." *Id.* For some of the calls between Young and Williams, this automated message did not appear because Young would indirectly call Williams after he first called the Department of Veterans Affairs and asked to be transferred to Williams. However, these indirect phone calls were made during the same time span that Williams was accepting direct jail calls from Young, while he was incarcerated.

### 3.1.1    Legal standard.

The Fourth Amendment is not triggered unless the state intrudes into an area "in which there is a 'constitutionally protected reasonable expectation of privacy.' " *New York v. Class*, 475 U.S. 106, 112 (1986). This requires the defendant to subjectively believe the information is private and for that belief to be objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). Any expectation of privacy in outbound calls from prison is not objectively reasonable and the Fourth

Amendment is not triggered by the routine taping of such calls. *United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996).

### 3.1.2   Williams had no reasonable expectation of privacy for jail calls she received from co-defendant Young.

Williams recognizes that inmates do not have an objectively reasonable expectation of privacy for outbound jail calls under *Van Poyck*, however she argues that *Van Poyck* is distinguishable because it was limited to the inmate's privacy interest. Dkt. No. 109 at 3. She argues that *Van Poyck* is limited to its facts and in particular the finding that Van Poyck had "consented to the recordings because he (1) signed a form warning him of monitoring and taping; (2) read signs above the phones warning of taping; and (3) read a prisoner's manual warning of the recordings." *Van Poyck,* 77 F.3d at 291. But *Van Poyck* is not distinguishable because Williams was provided a warning. When she received calls from Young, while he was in custody, an automated message alerted her to the fact that the phone call would be monitored. Dkt. No. 146-2. She had a chance to opt-out before receiving the call, or to accept the call by dialing 1. *Id*. Williams did not have an objectively reasonable expectation of privacy in her calls with Young. The automated message immediately informed Williams that Young was incarcerated and that the call would be monitored and was not private. She could not have reasonably expected her calls to be private when she was informed that her conversation was with an inmate, Young, and that the call was being recorded. *United States v. Jarmon*, 14 F.4th 268, 272 (3d Cir. 2021) (holding an individual receiving a phone call from a prison has no reasonable expectation of privacy on the

phone call). *See also, United States v. Harrison,* 986 F. Supp. 280, 281–82 (M.D. Pa. 1997) (defendant had no subjective expectation of privacy because it was clear from the content of the telephone calls and his guarded language that he knew he was speaking with a prisoner and that the calls would be monitored); *United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir. 1989) (non-prisoner had no reasonable expectation of privacy when speaking to a prisoner on a call when she was aware of the prison's monitoring).

Finally, Williams argues that she did not consent to the jail call recordings because she did not sign any consent form, she was not subject to custodial rules, and she was not provided meaningful notice that the call would be recorded. Dkt. No. 109 at 3. When there is no reasonable expectation of privacy, proof of consent is not necessary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (consent is an "exception" to the warrant requirement for searches).

Accordingly, the Court denies the motion to suppress the jail call recordings between Young and Williams.

### 3.1.3    An evidentiary hearing is not needed.

An evidentiary hearing on the motion to suppress is unnecessary. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."). The Court finds no genuine factual dispute and denies Williams's request for an evidentiary hearing.

ORDER DENYING DEFENDANT WILLIAMS'S MOTIONS TO SUPPRESS - 10

## 4. CONCLUSION

Accordingly, the Court ORDERS as follows:

1. The motion to suppress defendant's statements, Dkt. No. 108 is DENIED. The request for an evidentiary hearing is DENIED.

2. The motion to suppress jail calls, Dkt. No. 109 is DENIED. The request for an evidentiary hearing is DENIED.


Dated this 24th day of June, 2026.

Jamal N. Whitehead
United States District Judge

ORDER DENYING DEFENDANT WILLIAMS'S MOTIONS TO SUPPRESS - 11