UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DARRYL LAMONT YOUNG, and AQEELA NGIESHA WILLIAMS,<br><br>Defendants. | CASE NO. 2:24-cr-00176-JNW<br><br>ORDER DENYING WILLIAMS'S MOTION FOR NEW TRIAL |

## 1. INTRODUCTION

Defendant Aqeelah Ngiesha Williams asks the Court to vacate the jury's verdicts against her and grant a new trial under Federal Rule of Criminal Procedure 33. Dkt. No. 237. She says her pro se co-defendant, Darryl Lamont Young, prejudiced her with his rambling cross-examinations and testimony. The Government opposes the motion. Dkt. No. 238. Williams requests oral argument, but the Court doesn't need it to decide this motion. *See* LCrR 12(b)(12). The motion is DENIED.

## 2. BACKGROUND

A grand jury charged Young and Williams in a 14-count Superseding Indictment with conspiracy to commit wire fraud, conspiracy to commit aggravated identity theft, six counts of wire fraud, and six counts of aggravated identity theft. Dkt. No. 53. The Government alleged that the two defrauded seriously ill, elderly veterans in intensive-care units, their emergency contacts, and others, and that Young, who was in custody for much of the scheme, ran it over recorded jail calls.

Before trial, Williams moved to sever, arguing in part that Young's decision to represent himself might lead him to "inject 'inflammatory' or irrelevant matters into the trial" or to shift blame to her. Dkt. No. 172 at 8. The Court denied the motion, finding those concerns speculative, noting that Williams "identifie[d] no specific statement or filing by Young that would prejudice her defense," and explaining that any risk could be managed at trial through limiting and curative instructions. *Id*. at 8–9. The Court also barred Young from putting facts before the jury except from the witness stand. Dkt. No. 175 at 4–5.

Trial began on July 7, 2026, and lasted five days. The jury heard dozens of jail calls, including calls in which Williams connected Young to VA medical centers and victims by three-way call, discussed those calls with Young once the victims hung up, used stolen card numbers, and demanded that Young get her "fresh" cards. Young testified, and on cross-examination by Williams's counsel he told the jury that Williams didn't know what he was doing and never meant to defraud anyone. The jury convicted Young on all 14 counts. Dkt. No. 222. It convicted Williams on both conspiracy counts, four of the six wire fraud counts, and all six

aggravated identity theft counts, and acquitted her on two wire fraud counts. *Id.* Williams moved for a new trial on August 24, 2026. Dkt. No. 237.

## 3. LEGAL STANDARD

Rule 33 lets the Court "vacate any judgment and grant a new trial if the interest of justice so requires."[1] Fed. R. Crim. P. 33(a). Unlike on a motion for acquittal, the Court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and judge witness credibility for itself. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000); *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). But the Court uses that power sparingly. A new trial is warranted "only in exceptional cases in which the evidence preponderates heavily against the verdict," *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (citation modified), such that "a serious miscarriage of justice may have occurred," *Alston*, 974 F.2d at 1211–12 (citation modified).

Williams doesn't argue that the evidence preponderates against the verdicts. Her theory is that Young made the joint trial unfair—a prejudicial-joinder claim, as she concedes. Dkt. No. 237 at 2. Relief is warranted only when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or

[1] A motion for a new trial on any ground other than newly discovered evidence must be filed within fourteen days after the verdict. Fed. R. Crim. P. 33(b)(2). Williams filed hers more than a month after the verdict. But Rule 33's deadline is a claim-processing rule, not a jurisdictional one, and the Government hasn't raised the issue. See *Eberhart v. United States*, 546 U.S. 12, 18–19 (2005) (per curiam). The Court therefore reaches the merits.

innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The defendant must identify that risk with some particularity—broad and general claims of prejudice won't do. *United States v. Baker*, 10 F.3d 1374, 1389 (9th Cir. 1993). And even when some risk exists, "less drastic measures, such as limiting instructions, often will suffice to cure" it. *Zafiro*, 506 U.S. at 539.

## 4. DISCUSSION

Williams points to Young's questions to Sergeant Vasquez and Agent Spiess about the Federal Communications Act and agency personnel matters, his "confusing and argumentative" cross-examinations, his meandering testimony, and the Court's repeated admonishments. Dkt. No. 237 at 3. The Court doesn't quarrel with the description.

But a messy performance by a pro se co-defendant isn't prejudice to the represented one. The Ninth Circuit rejected nearly the same argument in *United States v. Atcheson*, where the defendant claimed his co-defendant's pro se efforts were "so ineffectual as to increase the probability that the jury would convict." 94 F.3d 1237, 1244 (9th Cir. 1996). There was no prejudice because the co-defendant's "defense tended to incriminate himself, not [the defendant]." *Id.* The Court relied on *Atcheson* in denying severance, Dkt. No. 172 at 8, and the trial bore it out—when Young drew objections and admonishments, it was Young's credibility that suffered. His questions about the Federal Communications Act didn't suggest Williams was guilty of anything. And the blame-shifting Williams feared before trial, never

happened. If anything, Young was the best witness Williams had, as he told the jury she didn't know what he was doing.

Williams also never says what the jury heard that it shouldn't have, or which of her trial rights was compromised. Before trial, the Court faulted her for identifying "no specific statement" by Young that would prejudice her. Dkt. No. 172 at 8. With the trial record in hand, she still points to no question or answer that was both improper and damaging to her. Nor does she say she asked for a curative instruction or a mistrial when Young strayed, even though the Court told her those tools were available. *Id.* at 7–9. When the Government objected, the Court ruled; when Young wandered, the Court redirected him. And the Court instructed the jury to consider the evidence against each defendant separately, an instruction jurors are presumed to follow. *Zafiro*, 506 U.S. at 540–41.

The verdicts show this jury did just that. It convicted Young on every count but acquitted Williams on two. A split verdict is "the best evidence of the jury's ability to compartmentalize the evidence." *Baker*, 10 F.3d at 1387 (citation modified). Jurors who could sort the proven wire fraud counts from the unproven ones were not misled by Young.

Williams also cites *Bruton v. United States*, 391 U.S. 123 (1968), and *Krulewitch v. United States*, 336 U.S. 440 (1949), for the proposition that some evidentiary harm can't be cured by a limiting instruction. Dkt. No. 237 at 3. True, but both cases involve evidence the jury should never have heard—a non-testifying co-defendant's confession in *Bruton*, 391 U.S. at 126, 135–37, and a co-conspirator's post-conspiracy hearsay in *Krulewitch*, 336 U.S. at 442–44. Neither problem exists

here. Young testified and was cross-examined. And Williams identifies nothing admitted against her at the joint trial that would have been excluded had she been tried alone. There was nothing for a limiting instruction to fail to cure. As for her complaint that a pro se co-defendant's questions "could not practically be vetted before the jury heard them," Dkt. No. 237 at 4, the Court addressed that risk by limiting what Young could say and do in front of the jury, Dkt. No. 175 at 4–5, and Williams doesn't argue that he violated that order.

Finally, weighing the evidence for itself, the Court sees no risk that an innocent person was convicted. The jury heard Williams on tape connecting Young to VA hospitals and victims, listening while he posed as a VA employee to pry loose card numbers, using the stolen cards, and pressing Young for "fresh" ones. The jury weighed Young's testimony that Williams was in the dark against those recordings and believed the recordings. This is not the exceptional case in which "the evidence preponderates heavily against the verdict." *Pimentel*, 654 F.2d at 545 (citation modified).

## 5. CONCLUSION

In sum, Williams's motion for a new trial, Dkt. No. 237, is DENIED.

Dated this 19th day of October, 2026.

Jamal N. Whitehead
United States District Judge